Filed 5/13/16  P. v. Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRIS ANTHONY WILLIAMS,<br><br>    Defendant and Appellant. | D068034<br><br><br><br>(Super. Ct. No. SCD260413) |


APPEAL from a judgment of the Superior Court of San Diego County, Frederick Maguire, Judge.  Affirmed.


Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristen Chenelia and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Chris Anthony Williams and his codefendant, Charnisha Burnettex, of selling a controlled substance.[1] (Health & Saf. Code, § 11379, subd. (a).) In addition, the trial court found true allegations Williams had a prior narcotics sales related conviction (Health & Saf. Code, § 11370.2, subd. (c); Pen. Code, § 1203.07, subd. (a)(11)), five prior strike convictions (Pen. Code, §§ 667, subds. (b)-(i), 1170.12), and three prior prison commitment convictions (Pen. Code, § 667.5, subd. (b)). After striking the prior narcotics sales related conviction finding and two of the prior prison conviction findings, the court sentenced Williams to five years in prison.

Williams appeals, contending we must reverse the judgment because the court violated his right to due process of law and a fair trial by excluding evidence of a recorded conversation between him and Burnettex after their arrest. We are unpersuaded by this contention and affirm the judgment.

BACKGROUND

An undercover police officer approached Williams near 5th and C street in San Diego and asked where he could buy $20 worth of methamphetamine. Williams turned, gestured toward Burnettex, who was standing five to seven feet away, and said she had the narcotics.

---

[1] Some documents and evidence in the record refer to Williams's codefendant by the last name Broadnax, rather than Burnettex. We use Burnettex as she indicated at the preliminary hearing Burnettex was her last name and this last name appeared on the jury's verdict against her.

2

As the officer approached Burnettex, Williams told her the officer wanted $20 worth of methamphetamine. After checking her bra, she told Williams she did not have it and thought she had left it on the bed. Williams asked her if she was sure. She checked her bra again and told Williams she could not find it. The officer told Williams he was going to keep looking and started to walk away.

Williams stopped the officer and told him to wait. Williams then looked toward Burnettex and told her she needed to make sure she did not have it. She turned away from the officer and checked again. She ultimately retrieved a small, clear, plastic baggie containing .31 grams of methamphetamine and gave it to the officer. The officer then gave her two $10 bills with prerecorded serial numbers.

A uniformed police officer subsequently stopped and searched Williams. The officer found a cell phone and a hotel room key in one of Williams's front pockets. The officer searched the hotel room, which was registered to Williams, and found a black backpack on the bed. The backpack contained 10 small plastic baggies of the type commonly used for packaging narcotics, several pieces of paper, and a couple of prescription bottles with Williams's name on them. The officer did not find any narcotics or money either on Williams or in Williams's hotel room.

Another uniformed officer stopped Burnettex and searched her. The officer found the two $10 bills with prerecorded serial numbers used by the undercover officer.

At a subsequent curbside lineup, the undercover officer positively identified Williams and Burnettex as the people who sold him methamphetamine. The officer was

3

not wearing a body camera and, although he was wearing a transmitter, his encounter with Williams and Burnettex was not recorded.

The undercover officer looked through Williams's cell phone and found three text messages sent and received earlier in the day. The first text message read "Hey, where you at? Somebody wants a 40. I'm at 5th and C Street in front of the [drugstore]. Hurry." The second text message read, "Nisha, where are you at, baby girl?" The third text message read, "Babe, the police is hot out, Nisha."

## DISCUSSION

## I

After their arrest, Williams and Burnettex were placed in the back of a patrol car and the police recorded their conversation. The portion of the conversation relevant to this appeal is as follows:

> "OFFICER: Okay, you guys are both under arrest for a narcotics transaction that took place over here, okay?
>
> "[BURNETTEX]: Wait, what narcotics?
>
> "OFFICER: You guys sold drugs.
>
> "[BURNETTEX]: All I sold—all I had was spice.[2]
>
> "OFFICER: Okay, watch out.

---

2    According to the National Institute on Drug Abuse, "Spice is a mix of herbs (shredded plant material) and manmade chemicals with mind-altering effects. It is often called 'synthetic marijuana' or 'fake weed' because some of the chemicals in it are similar to ones in marijuana; but its effects are sometimes very different from marijuana, and frequently much stronger." (<http://teens.drugabuse.gov/drug-facts/spice> [as of May 2, 2016].)

"[BURNETTEX]:  Babe, tell 'em.

"WILLIAMS:  I don't know.  I don't know what they talking about.

"[BURNETTEX]:  I don't know what they're talking about either.

"WILLIAMS:  I guess they talking about that [B]lack dude that you was talking to.

"[BURNETTEX]:  Did they get him?

"WILLIAMS:  I don't know.  Did you do a transaction with him?

"[BURNETTEX]:  I gave it to him but I don't—(unintelligible) (unintelligible)—

"WILLIAMS:  I don't know—wasn't even paying attention.  I was talking to your little niece.

"[BURNETTEX]:  They snitched, baby.

"WILLIAMS:  Who snitched?

"[BURNETTEX]:  Them.  They're talking to them.  I'm a be like, 'I didn't sell anything.'  All I had was that and that's money for my daughter.

"WILLIAMS:  Um, hmm.

"[BURNETTEX]:  I can't do this, baby.  Officer, what drug transaction, please, can you tell me about—'cause the only thing I had was my baby's diaper money.  (Unintelligible), would she even talk to us?

"WILLIAMS:  (Unintelligible)—

"[BURNETTEX]:  I—knew we shouldn't—If we get out of this, baby, we going home.

"WILLIAMS:  If—

"[BURNETTEX]: All we gotta do is say—All you gotta do is say that we didn't do anything, babe.

"WILLIAMS: I ain't did nothing. I don't know. Like I said,—Did you know the boy that you was talking to?

"[BURNETTEX]: (Inaudible)

"WILLIAMS: You didn't?

"[BURNETTEX]: Just don't say anything, babe. Just tell 'em we didn't do anything.

"WILLIAMS: I ain't got nothing. I ain't got nothing to say. There ain't nothin' I can say. (Unintelligible) narcotic transaction.

"[BURNETTEX]: The only narcotic she (unintelligible) was the spice, and that's not even a narcotic. I don't do—I'm a tell her I can't do drugs. I have a [child protective services] case. This will affect my [child protective services] case. They didn't even find nothing—All she found was twenty dollars on me and then some fuckin' spice.

"WILLIAMS: Who's that your little niece was talking about?

"[BURNETTEX]: Some Mexican dude.

"WILLIAMS: She said a Mexican dude hit her?

"[BURNETTEX]: Um, hmm.

"WILLIAMS: You didn't do no transaction with nobody, did you?

"[BURNETTEX]: Not, not, not—(unintelligible) baby, no. That twenty dollars, we had.

"WILLIAMS: I wonder who that was that smacked your little cousin.

"[BURNETTEX]: I don't know.

"WILLIAMS: Your little niece or whatever.

"[BURNETTEX]:  I don't know, babe.  But I'm not trippin' on that.
Right now I'm trying to get us out of this.

"WILLIAMS:  Yeah, I wanna know what they're talking about too.
Who they back there talkin' to?

"[BURNETTEX]:  Each other.  Officer!"

II

Before trial, Williams's counsel sought to admit and the prosecution sought to exclude evidence of the conversation.  Williams's counsel argued the conversation, particularly the portion where Burnettex admitted giving the undercover officer spice, was admissible under the hearsay exception for statements against penal interest.  (Evid. Code, § 1230.)  Williams's counsel also argued the conversation was admissible for the nonhearsay purpose of showing Williams was not directing or controlling Burnettex's actions, as Burnettex intended to claim in her defense.  The prosecutor argued the conversation was not admissible as a statement against penal interest and, even if it were, the court should exclude it under Evidence Code section 352.

Burnettex's counsel did not specifically seek to admit or exclude evidence of the conversation.  Burnettex's counsel believed the jury would find the conversation to be staged, but she did not believe admission of the evidence would hurt Burnettex's defense, which was that Williams coerced her into handing the undercover officer drugs.  However, she argued that, if the court allowed Williams to introduce part of the conversation, the court should allow her to admit most of the remainder for context, except for references to Burnettex's daughter, her child protective services case, diaper

7

money or spice, which Burnettex's counsel argued were irrelevant and prejudicial under any circumstances.

After listening to the recording of the conversation and hearing the parties' extensive arguments, the court declined to admit any part of it. The court remarked the conversation was "an Academy Award performance. They knew that tape was in that car and the record should reflect that I'm laughing because they knew. It struck me as being very staged." In addition, the court found Burnettex's remarks did not qualify as declarations against her penal interest because she did not admit to doing anything she regarded as wrong. More particularly, the court found her admissions were not so far contrary to her penal interest to be considered reliable. Finally, the court further found admission of the conversation for the nonhearsay purpose of showing Williams was not directing or controlling Burnettex's actions presented a problem under Evidence Code section 352, in part because the conversation included Williams's own inadmissible hearsay denials of guilt.

Nonetheless, the court allowed Williams's counsel to cross-examine the undercover officer, who had listened to the recording of the conversation, about Williams's tone during the conversation. The officer testified that, during the conversation, Williams was not aggressive and his tone was not commanding. However, the officer also testified Burnettex was not commanding the conversation and at one point she "kind of lost it."

III

A

" 'Evidence Code section 1230 provides that the out-of-court declaration of an unavailable witness may be admitted for its truth if the statement, when made, was against the declarant's penal interest.  The proponent of such evidence must show "that the declarant is unavailable, that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." '  [Citation.]  'The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration.  [Citations.]  In determining whether a statement is truly against interest within the meaning of Evidence Code section 1230, and hence is sufficiently trustworthy to be admissible, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' " (*People v. Geier* (2007) 41 Cal.4th 555, 584 (*Geier*), overruled on another point by *Melendez–Diaz v. Massachusetts* (2009) 557 U.S. 305, as acknowledged in *People v. Houston* (2012) 54 Cal.4th 1186, 1220.)  "A trial court's decision to admit or exclude evidence is a matter committed to its discretion ' "and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Geier*, *supra*, at p. 585.)

Here, even if Burnettex's remarks about selling or giving away fake drugs could be construed as statements against her penal interest, the circumstances under which she

uttered the remarks undermine their reliability. After listening to the recording, the court found Williams and Burnettex knew of the recording and had staged their conversation. In addition, Burnettex's remarks were self-serving and intended to be exculpatory as their context shows Burnettex did not believe selling or giving away fake drugs justified her arrest. (*People v. Duarte* (2000) 24 Cal.4th 603, 611-612 [self-serving statements lack trustworthiness, and even facially inculpatory hearsay statements may be exculpatory when considered in context].) Accordingly, we cannot conclude the court's decision to exclude Burnettex's remarks as hearsay was arbitrary, capricious, or patently absurd. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1109 [a court does not abuse its discretion in excluding extrajudicial statements that are undisputedly against the declarant's penal interests, but have indicia of unreliability].)

B

Further, regardless whether Burnettex's remarks or the other portions of her conversation with Williams were admissible as declarations against penal interest or for nonhearsay purposes, "the court has broad discretion under Evidence Code section 352 to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects. [Citation.] An appellate court reviews a court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion. [Citation.] We will not reverse a court's ruling on such matters unless it is shown ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of

10

justice." ' "  (*People v. Merriman* (2014) 60 Cal.4th 1, 74; see *Geier*, *supra*, 41 Cal.4th at p. 584 [a court may exclude a declaration against interest under Evid. Code, § 352].)

Here, as previously discussed, the probative value of Williams and Burnettex's conversation was minimal because their statements appeared staged and generally lacked reliability because of their self-serving nature.  Conversely, there was genuine potential for admission of the conversation to be unduly prejudicial, confusing, or misleading because it included Burnettex's demonstrably false statement about only providing the undercover officer with spice, which she wanted excluded and Williams wanted admitted.  It also included Williams's exculpatory statements, which would be inadmissible hearsay but for their possibility of providing context for some of Burnettex's remarks.  (See Evid. Code, § 356 ["Where part of [a] … conversation … is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; … when a … conversation … is given in evidence, any other … conversation … which is necessary to make it understood may also be given in evidence"].)  Under such circumstances, we cannot conclude the court abused its discretion in excluding Burnettex's remarks and the other portions of the conversation under Evidence Code section 352.

C

Finally, we are not persuaded by Williams's assertion the exclusion of all or part of the conversation deprived him of his federal constitutional right to present a defense.  A criminal defendant does not have a federal constitutional right to present unreliable hearsay evidence (*People v. Ayala* (2000) 23 Cal.4th 225, 269), and " 'a state court's

11

application of ordinary rules of evidence—including the rule stated in Evidence Code section 352—generally does not infringe upon [a defendant's right to present a defense].' " (*People v. Linton* (2013) 56 Cal.4th 1146, 1183.)  This is particularly true where, as here, the court allowed Williams to address Burnettex's duress claim by the alternative means of cross-examining the undercover officer, who confirmed Williams never spoke or behaved aggressively toward Burnettex.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.